**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Arthur Attakai, Jr., | No. CV-23-08057-PCT-JAT |
| Plaintiff, | **ORDER** |
| v. | |
| Office of Navajo and Hopi Indian Relocation, an administrative agency of the United States, | |
| Defendant. | |

Pending before the Court are Plaintiff's Motion for Summary Judgment (Doc. 12) and Defendant's Cross-Motion for Summary Judgment (Doc. 14), which are fully briefed (Docs. 12, 13, 14, 18, 20). The Court now rules on the motions.

**I.    BACKGROUND**

Plaintiff Arthur Attakai Jr. ("Plaintiff") seeks judicial review of an administrative decision by Defendant Office of Navajo and Hopi Indian Relocation ("ONHIR" or "Defendant"), denying Plaintiff relocation benefits under the Navajo-Hopi Settlement Act. Pub. L. No. 93-531, 88 Stat. 1712 (1974) (the "Settlement Act").

**A.    The Settlement Act**

The Settlement Act attempted to resolve an inter-tribal conflict between the Hopi and Navajo by authorizing a court-ordered partition of land that was then-jointly held by the two tribes. *See Bedoni v. Navajo-Hopi Indian Relocation Comm'n*, 878 F.2d 1119, 1121–22 (9th Cir. 1989). The Settlement Act also created the predecessor to ONHIR to provide services and benefits to relocate individuals who resided on land allocated to the

other tribe. *Id.* at 1121. To be eligible for benefits under the Settlement Act, a Navajo applicant must prove (1) that he was a legal resident of the Hopi Partitioned Land ("HPL") on December 22, 1974, and (2) that he qualified as a head of household by July 7, 1986. *See* 25 C.F.R. § 700.147 (1982). The applicant bears the burden of proving legal residence and head of household status. § 700.147(b).

### B. Facts and Procedural History

Plaintiff is an enrolled member of the Navajo Nation who applied for relocation benefits under the Settlement Act on April 9, 2010. (Doc. 12 at 5; Doc. 14 at 2). In his application, Plaintiff stated that, on December 22, 1974, he was living in the Teesto Chapter of HPL in the residence where he was born. (Doc. 14 at 2). He stated that he first earned more than $1,300 in one year in either 1984 or 1985, while working for Commercial Drywalling, Inc. ("CDI") in Phoenix, Arizona. (Doc. 12 at 2; Doc. 14 at 2). He also stated that his first child was born in 1989. (Doc. 14 at 2). Plaintiff further stated in his application that he moved from HPL in May 1992, when his parents were relocated. (Doc. 12 at 2; Doc. 14 at 2).

Relocation Specialist Nora Louis contacted Plaintiff by phone on January 7, 2014 ("January call") to discuss his application. (Doc. 14 at 2). Louis typed notes after the phone call. (*Id.*). According to Louis's notes, Plaintiff said that he lived on HPL from his birth until April 1992 when his parents were relocated. (*Id.* at 3). The notes indicate that Plaintiff told Louis that the only time he left his parents' home on HPL was when he attended boarding school in Seba Dalkai, Dilcon, and Snowflake. (*Id.*). He also told Louis that he met his wife, Sadie Attakai, in 1987. (*Id.* at 5).

Plaintiff spoke with Louis again on April 21, 2014 ("April call") and typed notes from the conversation. (Doc. 12 at 13; Doc. 14 at 2). Louis later testified that she spoke with Plaintiff a second time because she "needed to clarify the information that [she] previously obtained." (Doc. 14 at 5). During this second conversation, as reflected in Louis's notes, Plaintiff told Louis that he met his wife Sadie in 1983 when he was in Phoenix looking for employment. (*Id.* at 3). The notes from the April call indicate that

Plaintiff said he was hired by a drywall company in Phoenix in 1984 and worked there for just under two years until he was laid off in December 1985. (*Id.*). The notes also indicate that Plaintiff said he rented an apartment with Sadie in Phoenix during this time and that they moved in with Sadie's family in Jeddito in 1986. (*Id.* at 13–14). The notes further indicate that Plaintiff said that, later in 1986, he moved back to his parents' home on HPL and lived there until 1989, when he moved to Snowflake. (*Id.* at 4).

ONHIR denied Plaintiff's application via letter on April 29, 2014. (*Id.*; Doc. 13 at 5). ONHIR determined that Plaintiff had not proven by a preponderance of the evidence that he was a resident of HPL at the time he attained head of household status. (Doc. 13 at 5). The denial letter states that information provided by Plaintiff in his application was inconsistent with Plaintiff's statements to Louis. (*Id.*; Doc. 14 at 4). Plaintiff timely submitted notice of appeal to ONHIR. (Doc. 13 at 5; Doc. 14 at 4).

At a pre-hearing conference held on October 3, 2014, Plaintiff argued that Louis's notes did not accurately record the dates that he worked for CDI and where he lived at that time. (Doc. 13 at 6). Plaintiff stated at this conference that he worked for "the drywall company" from June 1984 through July 1987 and that he lived in Phoenix with Sadie around 1988. (Doc. 14 at 4).

Plaintiff's appeal hearing was held before an Independent Hearing Officer ("IHO") on October 28, 2016. (Doc. 13 at 6). Plaintiff, his wife Sadie Attakai, and his sister Laurie Attakai testified on Plaintiff's behalf at the hearing. (Doc. 14 at 4). Nora Louis testified for ONHIR. (*Id.*). Plaintiff testified that he started working for CDI in May or June of 1984 and lived in a motel in Phoenix with his brothers at the time. (*Id.*). He testified that he worked on jobs in Phoenix and out of state. (*Id.*; Doc. 12 at 2). Plaintiff also testified that he returned to his parents' home on HPL when he was "laid off" between jobs; he stated that, in 1984, he returned to HPL about three times. (Doc. 12 at 2–3; Doc. 14 at 4). Plaintiff testified that he was injured on a job in California in February 1985, returned to his parents' home on HPL to recover, and resumed work for CDI in June 1986. (Doc. 12 at 15–16; Doc. 14 at 5). Plaintiff reaffirmed that his family relocated from their home on HPL in 1992.

(Doc. 12 at 13; Doc. 14 at 4). He testified that he met Sadie in 1987 and first lived with her in 1988, not in 1984 or 1985 while working in Phoenix. (Doc. 12 at 13; Doc. 14 at 5).

Sadie Attakai, Plaintiff's wife, testified at the hearing that she first met Plaintiff in 1987. (Doc. 12 at 13; Doc. 14 at 5). When asked if she ever lived with Plaintiff before 1987, she replied that she had, but she then stated that they met and "went down to Phoenix." (Doc. 14 at 5). Laurie Attakai, Plaintiff's sister, testified that Plaintiff was both at home and working during 1984 and 1985. (*Id.*).

Louis testified for ONHIR. (*Id.*). She stated that she had worked for ONHIR for over thirty years and that her notes of the phone calls accurately represented her conversations with Plaintiff. (*Id.*). She testified that she contacted Plaintiff a second time in April 2014 because she was asked to clarify the information Plaintiff provided during their first call in January 2014. (*Id.*). Louis stated that the April call lasted about ten minutes. (*Id.*). She also testified that, during the call, she read her notes back to Plaintiff, and Plaintiff affirmed that the information "sound[ed] about right." (*Id.*). After Louis testified, the IHO gave Plaintiff's counsel an opportunity to introduce rebuttal evidence, and counsel did not do so. (*Id.* at 15).

On January 9, 2017, the IHO issued his decision denying Plaintiff's appeal and affirming ONHIR's denial of relocation benefits. (*Id.* at 6). He found that Plaintiff and his wife Sadie were not credible witnesses and that Louis and Plaintiff's sister were credible witnesses. (*Id.*; Doc. 13 at 8). The IHO also found that Plaintiff was a resident of HPL on December 22, 1974, and remained a resident until 1983, when he began living in Phoenix. (Doc. 14 at 6). The IHO determined that Plaintiff became a head of household in 1984 by virtue of his earnings that year. (Doc. 12 at 2; Doc. 14 at 6). Because the IHO found that Plaintiff was a resident of Phoenix when he became head of household in 1984, the IHO determined that Plaintiff was not entitled to relocation benefits. (Doc. 12 at 2; Doc. 14 at 6).

ONHIR adopted the IHO's decision as final on March 23, 2017. (Doc. 13 at 9). Plaintiff now appeals ONHIR's decision.

## II. STANDARD OF REVIEW

The Administrative Procedure Act ("APA") governs judicial review of agency decisions under the Settlement Act. *Hopi Tribe v. Navajo Tribe*, 46 F.3d 908, 914 (9th Cir. 1995). The APA provides that a reviewing court may set aside an administrative agency's decision only if that decision was "arbitrary, capricious, an abuse of discretion, not in accordance with law, or unsupported by substantial evidence." *Bedoni*, 878 F.2d at 1122 (citing 5 U.S.C. § 706(2)(A), (2)(E) (1982)). "The scope of review under the 'arbitrary and capricious' standard is narrow and a court is not to substitute its judgment for that of the agency." *Hopi Tribe*, 46 F.3d at 914 (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)). An agency decision is arbitrary and capricious only if the agency "entirely failed to consider an important aspect of the problem, offered an explanation that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *State Farm*, 463 U.S. at 43.

"Substantial evidence is more than a mere scintilla, but less than a preponderance." *Orteza v. Shalala*, 50 F.3d 748, 749 (9th Cir. 1995). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007). In reaching his conclusions, the IHO "is entitled to draw inferences logically flowing from the evidence." *Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984). "Where evidence is susceptible of more than one rational interpretation, it is the [agency's] conclusion which must be upheld." *Id.* Ultimately, the Court must affirm if the agency "considered the relevant factors and articulated a rational connection between the facts found and the choices made." *Friends of Animals v. U.S. Fish & Wildlife Serv.*, 28 F.4th 19, 28 (9th Cir. 2022) (quoting *Ranchers Cattlemen Action Legal Fund United Stockgrowers of America v. U.S. Dep't of Agric.*, 499 F.3d 1108, 1115 (9th Cir. 2007)).

## III. CROSS-MOTIONS FOR SUMMARY JUDGMENT

Plaintiff argues that the IHO's decision "was arbitrary and capricious, was not supported by substantial evidence, and must be reversed." (Doc. 12 at 3). Defendant

ONHIR argues that "Plaintiff has not met his burden to establish that the IHO's decision was abitrary [sic] and capricious or unsupported by substantial evidence." (Doc. 14 at 7).

The parties agree that Plaintiff obtained head of household status in 1984 because he earned $4,895.00 that year. (Doc. 12 at 2; Doc. 14 at 11–12). The disputed issue is whether Plaintiff qualified as a legal resident of HPL in 1984.

### A. Credibility Findings

Plaintiff alleges that the IHO's finding that Plaintiff and his wife Sadie were not credible was not supported by substantial evidence. (Doc. 12 at 14). Plaintiff argues that the IHO gave "conclusive weight" to the notes and testimony of Louis and disregarded substantial, corroborating evidence. (*Id.* at 3). Plaintiff also argues that Louis's testimony and notes have a hearsay-like quality. (*Id.* at 12–14). Defendant responds that the IHO's credibility determinations are supported by substantial evidence. (Doc. 14 at 16–17).

The IHO found that Plaintiff was not a credible witness because he provided "inconsistent and contradictory information about his residence between 1983 and 1986." (*Id.* at 6). The IHO also found that Plaintiff's wife Sadie was not a credible witness, because her testimony was inconsistent with the information that Plaintiff provided to ONHIR. (*Id.*). The IHO found that Plaintiff's sister Laurie and ONHIR employee Louis were credible witnesses. (*Id.*; Doc. 13 at 8). The IHO determined that nothing in the record suggests Louis fabricated the information in her notes because it was gathered in the ordinary course of business and Plaintiff "confirmed" the information was accurate. (Doc. 13 at 8–9; Doc. 14 at 6).

"Generally, 'questions of credibility and resolution of conflicts in the testimony are functions solely' for the agency." *Parra*, 481 F.3d at 750 (quoting *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)). "When the decision of an [IHO] rests on a negative credibility evaluation, the [IHO] must make findings on the record and must support those findings by pointing to substantial evidence on the record." *Ceguerra v. Sec'y of Health & Hum. Servs.*, 933 F.2d 735, 738 (9th Cir. 1991). Nevertheless, the Ninth Circuit recognizes that an IHO is best suited "to observe [a witness]'s tone and demeanor, to explore

inconsistencies in testimony, and to apply workable and consistent standards in the evaluation of testimonial evidence. He is . . . uniquely qualified to decide whether [a witness]'s testimony has about it the ring of truth." *Sarvia-Quintanilla v. U.S. Immigr. & Naturalization Serv.*, 767 F.2d 1387, 1395 (9th Cir. 1985). Therefore, a reviewing court will not disturb an IHO's credibility findings unless the IHO fails to provide "specific and cogent reasons supported by substantial evidence." *Tso v. Office of Navajo & Hopi Indian Relocation*, No. CV-17-08183-PCT-JJT, 2019 WL 1877360, at *5 (D. Ariz. Apr. 26, 2019) (quoting *De Valle v. Immigr. & Naturalization Serv.*, 901 F.2d 787, 792 (9th Cir. 1990)); *see also Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995) (stating that the court "will not reverse credibility determinations of an [IHO] based on contradictory or ambiguous evidence").

Here, the IHO provided specific and cogent reasons supported by substantial evidence to explain his credibility findings. As the IHO acknowledged, the evidence regarding the core of Plaintiff's claim—his residency status when he became head of household—is "confusing, contradictory, and inconsistent." (Doc. 14 at 6). For example, Plaintiff testified at the hearing that he began working in Phoenix in May or June of 1984 and lived in a motel with his brothers, but he told Louis in the April call that he rented an apartment with Sadie during that period. (*Id.* at 13). Additionally, Plaintiff testified that he sustained a work injury in California in February 1985 and returned to his parent's home in Teesto to recover, but he did not mention this injury to Louis; he told Louis in the April call that he was living in Phoenix with Sadie at this time. (*Id.* at 13–14). The IHO noted that Plaintiff's testimony about his work injury and employment out of state conflicts with his earlier statements, in his application and to Louis during the January call, that the only time he was away from Teesto was when he attended school. (*Id.* at 7). This type of inconsistency has supported adverse credibility determinations in similar cases. *See, e.g.*, *Begay v. Office of Navajo & Hopi Indian Relocation*, No. CV-20-08102-PCT-SMB, 2021 WL 4247919, at *5 (D. Ariz. Sept. 17, 2021) (finding applicant's prior statements to ONHIR "[e]xtremely relevant" to her credibility because they contradicted her testimony);

*Bahe v. Office of Navajo & Hopi Indian Relocation*, No. CV-17-08016-PCT-DLR, 2017 WL 6618872, at *5 (D. Ariz. Dec. 28, 2017) (affirming IHO's determination that applicant had limited credibility in part because applicant's testimony conflicted with statements in the relocation benefits application). The IHO therefore identified specific, cogent reasons to support his finding that Plaintiff was not credible.

Plaintiff emphasizes that he was in a "rush" during the April call and was not under oath. (Doc. 12 at 13–14; Doc. 14 at 15). Regardless of how formal or informal Plaintiff's statements were, however, it remains that the statements are inconsistent. Another court in this district has noted that "[m]inor inconsistencies that go to the heart of [an] applicant's claim . . . will support an adverse credibility determination." *Kirk v. Office of Navajo & Hopi Indian Relocation*, 426 F. Supp. 3d 623, 629 (D. Ariz. 2019) (citing *Kaur v. Gonzalez*, 418 F.3d 1061, 1064 (9th Cir. 2005)). Here, much more than "minor inconsistencies" exist regarding the heart of Plaintiff's claim, and the IHO appropriately relied on these inconsistencies to support his finding that Plaintiff was not credible. Because the IHO articulated specific, cogent reasons supported by substantial evidence for his credibility findings, his determination was not arbitrary and capricious.

For similar reasons, the IHO's determination that Plaintiff's wife Sadie was not credible is supported by substantial evidence. The IHO gave a specific, cogent reason for finding Sadie not credible: her testimony was inconsistent with another statement in the record. *See Parra*, 481 F.3d at 750 (explaining that an IHO "may reject a third party's testimony upon giving a reason germane to that witness"); *see also Tso*, 2019 WL 1877360, at *7 (finding that inconsistencies between an applicant's testimony and his siblings' testimony "provided a clear and convincing reason to discredit the siblings' statements"). Because the IHO gave specific, cogent reasons for his credibility determinations, this Court must defer to the IHO's findings.

Plaintiff argues that it was inappropriate for the IHO to rely only on Louis's testimony and notes to discount Plaintiff and his wife Sadie, relying on *Manygoats v. Office of Navajo & Hopi Indian Relocation*, 735 F. Supp. 949 (D. Ariz. 1990). This case is

distinguishable, however. In *Manygoats*, the reviewing court held that the IHO impermissibly "seized upon an unsupported allegation" that the applicant's family left the area following a flood, even though the field investigators' report was "devoid of any factual predicates" and "no testimony of either the field investigator or the eligibility appeals specialist" supported that conclusion. 735 F. Supp. at 953. Plaintiff and Defendant dispute whether an analogy can be drawn between Louis and the field investigators in *Manygoats*, but that dispute is inapposite here. The *Manygoats* court was not concerned about the IHO's reliance on the field investigators so much as the fact that the IHO drew a conclusion unsupported by any evidence, including evidence offered by the field investigators. Unlike the IHO in *Manygoats*, the IHO here did not seize upon an allegation unsupported by any evidence. Instead, he evaluated conflicting evidence in the record and determined that one version was more accurate. *Manygoats* therefore does not undermine a finding of substantial evidence here.

Lastly, Plaintiff's argument regarding the hearsay-like qualities of Louis's notes does not render the IHO's decision arbitrary and capricious. As Plaintiff acknowledges, the Federal Rules of Evidence do not apply to administrative proceedings. (Doc. 12 at 12). Even so, Louis's notes and testimony bear indicia of reliability. Louis gathered information from Plaintiff in the ordinary course of business, and Plaintiff "confirmed" that Louis's notes of the April call were accurate. (Doc. 14 at 6). Reliance on Louis's notes therefore creates no reversible error.

**B.      Residency Findings**

The parties dispute the scope of the "temporarily away" exception to the residency requirement under 25 C.F.R. § 700.147 and whether Plaintiff has met the exception.

**i.      Extra-Record Material**

As a threshold matter, Defendant argues Plaintiff improperly attached extra-record material of a prior IHO decision to his Response and improperly relied on decisions cited within the response. (Doc. 20 at 4). Plaintiff argues that these decisions show a longstanding ONHIR policy that "a person retains an ancestral legal residence (domicile)

until that person takes affirmative action to transfer their legal residence somewhere else." (Doc. 18 at 4).

"[T]he Supreme Court has expressed a general rule that courts reviewing an agency decision are limited to the administrative record." *Lands Council v. Powell*, 395 F.3d 1019, 1029 (9th Cir. 2005) (citing *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 743–44 (1985)). There are "narrow exceptions" for when a court may consider "extra-record" evidence:

> (1) if admission is necessary to determine whether the agency has considered all relevant factors and has explained its decision, (2) if the agency has relied on documents not in the record, (3) when supplementing the record is necessary to explain technical terms or complex subject matter, or (4) when plaintiffs make a showing of agency bad faith.

*Lands Council*, 395 F.3d at 1030 (internal quotation marks omitted) (citing *Southwest Ctr. for Biological Diversity v. U.S. Forest Serv.*, 100 F.3d 1443, 1450 (9th Cir. 1996)). The District of Arizona has applied this rule in proceedings evaluating relocation benefits under the Settlement Act. *See Tso*, 2019 WL 1877360, at *7; *Sands v. Office of Navajo & Hopi Indian Relocation*, No. CV-22-08131-PCT-JAT, 2023 WL 8281705, at *3 (D. Ariz. Nov. 30, 2023). Although Plaintiff has not argued explicitly that any of these narrow exceptions apply, the Court interprets Plaintiff's argument that ONHIR has departed from its own precedent as an implied argument that admission of the prior decisions "is necessary to determine whether the agency has considered all relevant factors and has explained its decision." *Lands Council,* 395 F.3d at 1030.

"The first *Lands Council* exception—the 'relevant factors' exception—is the most difficult to apply." *San Luis & Delta-Mendota Water Auth. v. Locke*, 776 F.3d 971, 993 (9th Cir. 2014). "Reviewing courts may admit evidence under this exception only to help the court understand whether the agency complied with the APA's requirement that the agency's decision be neither arbitrary nor capricious." *Id.* "Because an agency must follow its own precedent or else explain any deviation, this Court may consider prior ONHIR decisions to determine whether a decision is arbitrary and capricious." *Stago v. Office of*

*Navajo & Hopi Indian Relocation*, 562 F. Supp. 3d 95, 102 (D. Ariz. 2021). "However, previous decisions only serve this purpose if they carry precedential value in the case at hand." *Id.*; *see also Akee v. Office of Navajo & Hopi Indian Relocation*, 907 F. Supp. 315, 319 (1995) (finding that prior ONHIR decisions did not render the IHO's decision arbitrary and capricious when they were distinguishable or inapposite).

Plaintiff has not met his "heavy burden" to prove that extra-record materials are necessary to adequately review the agency's decision here. *See Fence Creek Co. v. U.S. Forest Serv.*, 602 F.3d 1125, 1131 (9th Cir. 2010). Plaintiff references these cases in part to argue that the denial of benefits in his case is inconsistent with ONHIR's grant of benefits to similarly situated applicants. (Doc. 18 at 3–4). Courts in this district have declined to consider extra-record ONHIR decisions for this purpose, however, because the reviewing court "cannot determine what evidence was before the hearing officer in each case" and whether the cited cases are distinguishable. *Whitehair v. Office of Navajo & Hopi Indian Relocation*, No. CV-17-08278-PCT-DGC, 2018 WL 6418665, at *3 (D. Ariz. Dec. 6, 2018); *see also Stago*, 562 F. Supp. 3d at 103. Without this context, it is also difficult for a reviewing court to evaluate whether "Plaintiff's hand-picked sample of cases" represents a general policy that governs ONHIR's discretion. *Stago*, 562 F. Supp. 3d at 103 (quoting *Whitehair*, 2018 WL 6418665, at *3); *see also Sands*, 2023 WL 8281705, at *3.

Even if the cases Plaintiff cites did establish a general ONHIR policy, it would contravene established law to construe ONHIR precedent in the way Plaintiff suggests. Plaintiff argues that the cited ONHIR decisions establish that "an applicant's residing temporarily away from their HPL home is the standard policy" and is not an "exception." (Doc. 18 at 4). Plaintiff is incorrect. The "temporarily away" exception is well-established in agency materials and case law. *See, e.g.*, Commission Operations and Relocation Procedures; Eligibility, 49 Fed. Reg. 22277–78 (May 29, 1984) (explaining that individuals who are away from HPL "may still be able to prove legal residence"); *Akee*, 907 F. Supp. at 317 (citing ONHIR *Plan Update* of 1990, which defines the "temporarily away" exception). Any interpretation of ONHIR precedent that would contravene established law

would be improper and therefore cannot be "necessary to determine whether the agency has considered all relevant factors and has explained its decision." *Lands Council*, 395 F.3d at 1030.

Because none of the *Lands Council* extra-record exceptions apply, this Court will not consider the ONHIR decisions cited by Plaintiff.

### ii. Scope of the "Temporarily Away" Exception

Plaintiff asserts that an applicant "retains an ancestral legal residence (domicile) until that person takes affirmative action to transfer their legal residence somewhere else." (Doc. 18 at 4). Plaintiff contends that this reading is "the standard policy the Agency has applied through the years in recognition of the JUA reservation's isolation from wage employment and higher education opportunities." (*Id.* at 4–5). Plaintiff argues that the IHO abandoned this policy in Plaintiff's case and improperly imposed a "mere residence" standard on Plaintiff. (*Id.* at 5). Plaintiff notes that the IHO fails to explain why Plaintiff would "abandon his ancestral homesite in Teesto for rented quarters in Phoenix (whether a motel or apartment)." (*Id.* at 6).

Defendant argues that Plaintiff misstates the test for residency. (Doc. 20 at 1). Defendant asserts that, for the "temporarily away" exception to apply, Plaintiff has the burden of establishing that he maintained "substantial and recurring contact with his home within the HPL" while he was away. (*Id.* at 3 (citing *Goldtooth v. Office of Navajo & Hopi Indian Relocation*, No. CV-22-08120-PCT-DLR, 2023 WL 6880648, at *8 (D. Ariz. Oct. 18, 2023))). Defendant contends that Plaintiff's proposed "intent to abandon" test would improperly shift the burden of proof onto ONHIR. (Doc. 20 at 2, 5).

Evaluating residency on HPL "requires an examination of a person's intent to reside combined with manifestations of that intent." 49 Fed. Reg. 22277. Under this test, a person who has temporarily left HPL can establish legal residency on HPL "by showing substantial and recurring contacts with his home within the HPL." *Tso*, 2019 WL 1877360, at *4. Federal regulations clearly establish that the "burden of proving residence and head of household status is on the applicant." 25 C.F.R. § 700.147(b).

The Ninth Circuit recently rejected the same argument Plaintiff makes here, that "ONHIR was required to show that he had lost his earlier 'domicile' prior to becoming a head of household," because "the burden of proving residency and head of household status lies with the applicant." *Begay v. Office of Navajo & Hopi Indian Relocation*, No. 22-16502, 2023 WL 8449196, at *1 (9th Cir. Dec. 6, 2023) (unpublished). Another court in this district was also "not persuaded by Plaintiff's burden-shifting argument because the agency's controlling regulation, 25 C.F.R. § 700.147, does not place a burden on ONHIR to establish Plaintiff's residency. Rather, the burden remains on the Navajo applicant . . . ." *Tso*, 2019 WL 1877360, at *5. To make use of the "temporarily away" exception, Plaintiff has the burden to show that he maintained substantial, recurring contacts with his HPL homesite while he was away.

### iii. IHO's Residency Findings Were Not Arbitrary & Capricious

On the merits, the parties dispute whether Plaintiff was "temporarily away" from HPL. Plaintiff asserts that he remained a resident of HPL while living in Phoenix because he intended to maintain his HPL residency. (Doc. 18 at 2–7). Plaintiff also emphasizes that he is a lifelong member of the Teesto Chapter, stayed on HPL with his parents when he was not employed in Phoenix, and returned to his parent's home on HPL to recover from a work injury. (*Id.* at 6–7).

Defendant argues that Plaintiff did not meet his burden to prove he was "temporarily away" while living in Phoenix because Plaintiff did not maintain substantial and recurring contacts with his home on HPL. (Doc. 14 at 12; Doc. 20 at 2–4). Defendant asserts that Plaintiff lived in an apartment in Phoenix with his wife Sadie for nearly two years. (Doc. 14 at 14). He then moved back to Sadie's family's residence in Jeddito, not to his family's home in Teesto. (*Id.*). Defendant argues that these facts cut against Plaintiff's claim that he was temporarily away from HPL. (*Id.*).

Based on his credibility findings and the evidence presented, the IHO determined that Plaintiff was not a resident of HPL when he became head of household in 1984. (*Id.* at 6). The IHO found that Plaintiff was a resident of HPL on December 22, 1974, and

remained a resident until 1983, when he began living in Phoenix. (*Id.*). He found that Plaintiff began work in Phoenix for CDI in May or June of 1984 and became head of household this year due to his earnings from his employment. (*Id.* at 6, 15). The IHO also found that Plaintiff met Sadie in 1983 while he was looking for work and that they rented an apartment together in Phoenix from December 1983 to December 1985. (*Id.* at 14; Doc. 18 at 12). The IHO determined that, in 1986, Plaintiff and Sadie moved to Sadie's family's residence in Jeddito. (Doc. 14 at 14). The IHO also found that Plaintiff returned to work for CDI in Las Vegas in 1986. (*Id.* at 5). Because the IHO determined that Plaintiff was a resident of Phoenix, not HPL, when he became head of household, he held that Plaintiff was not entitled to relocation benefits. (*Id.* at 7).

To evaluate an applicant's intent to maintain residency on HPL under the "temporarily away" exception, an IHO may consider several forms of evidence, such as ownership of livestock, homesite leases, school or employment records, voting records, home ownership or rental off the disputed area, BIA Census Data, marital or birth records, driver's licenses, and "any other relevant data." 49 Fed. Reg. 22278. Courts have determined that "a plaintiff having his nuclear family reside at a residence on HPL, using the address of his HPL residence, or keeping his livestock on HPL" may indicate substantial, recurring contacts. *Goldtooth*, 2023 WL 6880648, at *7. However, contacts that appear "irregular, temporary, or primarily for social purposes" do not constitute substantial, recurring contacts. *See id.*; *see also Akee*, 907 F. Supp. at 319 (finding that applicant did not qualify for "temporarily away" status when she and her nuclear family were absent from HPL for "a very substantial amount of time," had no belongings or livestock at her grandmother's house on HPL, and appeared to return to HPL "for visitation purposes" only).

The IHO did not err in determining that Plaintiff was not a resident of HPL when he attained head of household status in 1984. Although the details of Plaintiff's employment and living situations are unclear, Plaintiff maintained employment and housing away from HPL for some time between 1983 and 1989. Plaintiff testified to

working in Phoenix, Las Vegas, and California during this period. (Doc. 14 at 13). In other relocation benefits cases, maintaining employment away from HPL weighed against a finding that an applicant was temporarily away. *See Barton v. Office of Navajo & Hopi Indian Relocation*, No. CV-22-08022-PCT-SPL, 2023 WL 2991627, at *3 (D. Ariz. Apr. 18, 2013) (declining to apply "temporarily away" exception in part because applicant worked jobs that required him to travel away from HPL); *Salt v. Office of Navajo & Hopi Indian Relocation*, No. CV-22-08139-PCT-DJH, 2023 WL 4182163, at *4–*5 (D. Ariz. June 23, 2023) (declining to apply "temporarily away" exception in part because of the "materiality" of applicant's living situation away from HPL, including her job, rental of an apartment, and driver's license and vehicle registration in another state).

Plaintiff also relocated his nuclear family away from HPL, which further weakens his argument that he was "temporarily away." For example, in *Goldtooth*, the applicant moved his nuclear family, his mobile home, and his full-time employment away from HPL. 2023 WL 6880648, at *7. The court declined to apply the "temporarily away" exception, reasoning that if the applicant "was temporarily away for college, it would be reasonable to expect [him] to move his nuclear family and mobile home back to HPL after graduation. Yet that did not happen." *Id.*; *see also Akee*, 907 F. Supp. at 318–19 (noting that applicant married and moved away from HPL with her family). Similarly, Plaintiff here moved to Jeddito, not HPL, after his employment in Phoenix ended. (Doc. 14 at 14). He then moved to Snowflake in 1989, the year his first child was born. (*Id.* at 2). The fact that Plaintiff relocated his family to somewhere other than HPL undermines his claim that he was "temporarily away" from HPL.

The IHO reasonably found that Plaintiff's contacts with HPL were insufficient to establish continued residency on HPL. Under the deferential standard of review required here, the Court concludes that the IHO's residency determination was supported by substantial evidence. The IHO's denial of relocation benefits was therefore not arbitrary or capricious.

### IV. CONCLUSION

For the reasons stated above, Defendant ONHIR's decision to deny relocation benefits was not arbitrary, capricious, or an abuse of discretion. It was in accordance with law and supported by substantial evidence. Therefore, Defendant is entitled to summary judgment.

Accordingly,

**IT IS ORDERED** Plaintiff's Motion for Summary Judgment (Doc. 12) is **DENIED**.

**IT IS FURTHER ORDERED** Defendant's Cross-Motion for Summary Judgment (Doc. 14) is **GRANTED**. Defendant's administrative decision denying Plaintiff's application for relocation benefits is, therefore, **AFFIRMED**. The Clerk of Court shall enter judgment accordingly.

Dated this 27th day of March, 2024.

James A. Teilborg
Senior United States District Judge